UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JENS SEJERSEN,

                                                        **REPORT AND**
                                                        **RECOMMENDATION**

                        Plaintiff,
                                                        11-CV-1405
                                                        (LEK/VEB)

                v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.
_____

## I. INTRODUCTION

        In November of 2009, Plaintiff Jens Sejersen applied for Supplemental Security

Income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security

Act.  Plaintiff alleges that he has been unable to work since May of 2008 due to various

impairments. The Commissioner of Social Security denied Plaintiff's applications.

        Plaintiff, by and through his attorneys, Lachman & Gorton, Peter A. Gorton, Esq.,

of counsel, commenced this action seeking judicial review of the Commissioner's decision

pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

         The Honorable Gary L. Sharpe, Chief United States District Judge, referred this

case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. §

636(b)(1)(A) and (B). (Docket No. 16).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

On November 12, 2009, Plaintiff applied for SSI benefits and DIB under the Social Security Act, alleging that he had been unable to work since May 21, 2008. (T at 101-104, 105-111).[1] The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Binghamton, New York, on January 28, 2011, before ALJ Bruce Fein. (T at 30).[2] Plaintiff appeared with his attorney and testified. (T at 34-40).

On June 9, 2011, the ALJ issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act and denying his claim for benefits. (T at 6-29). The ALJ's decision became the Commissioner's final decision on November 3, 2011, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 1-4).

Plaintiff, by and through counsel, commenced this action by filing a Complaint on November 30, 2011. (Docket No. 1). The Commissioner interposed an Answer on April 16, 2012. (Docket No. 7). Plaintiff filed a supporting Brief on August 6, 2012. (Docket No. 13). The Commissioner filed a Brief in opposition on October 9, 2012. (Docket No. 15).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

[2] The ALJ presided via videoconference from Syracuse, New York (T at 32).

accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons set forth below, it is recommended that Plaintiff's motion be denied, the Commissioner's motion be granted, and this case be dismissed.

## II. DISCUSSION

### A. Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

---

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.    Analysis

### 1.    Commissioner's Decision

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 21, 2008, the application date, and met the insured status requirements of the Social Security Act through December 31, 2010. (T at 11). The ALJ found that Plaintiff had the following impairment considered "severe" under the applicable Social Security Regulations: borderline intellectual functioning. (T at 12).  The ALJ found that several impairments alleged by Plaintiff (namely, sleep apnea, diabetes, hypertension, hyperlipidemia, and obesity) were non-severe impairments. (T at 12-16).

The ALJ determined that Plaintiff's medically determinable impairment (borderline intellectual functioning) did not meet or equal one of the impairments listed in Appendix I

---

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

of the Regulations (the "Listings"). (T at 16-19).

After reviewing the medical evidence, the ALJ concluded that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but was restricted to work that consisted of simple tasks and instructions. (T at 19-23). The ALJ found that Plaintiff could not perform his past relevant work. (T at 23).

Considering Plaintiff's residual functional capacity, age (26 years old on the alleged onset date), education (high school), and work experience (unskilled), the ALJ determined that Plaintiff was able to perform jobs that exist in significant numbers in the national economy. (T at 23-24). Accordingly, the ALJ concluded that Plaintiff had not been under a "disability," as that term is defined under the Act, from the alleged onset date (May 21, 2008) through the date of the ALJ's decision (June 9, 2011), and was therefore not entitled to benefits. (T at 24).

As noted above, the ALJ's decision became the Commissioner's final decision on November 3, 2011, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 1-4).

## 2. Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed. He offers three (3) principal arguments in support of his position. First, Plaintiff argues that the ALJ should have concluded that several of his impairments were severe. Second, Plaintiff contends that the ALJ erred by finding that Plaintiff's impairments did not meet or medically equal the impairment set forth at § 12.05 (C) of the Listings. Third, Plaintiff challenges the ALJ's credibility determination. Each argument will be addressed in turn.

### a. Severity of Impairments

6

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

Plaintiff contends that his sleep apnea, diabetes, hypertension, hyperlipidemia, and obesity should have been considered severe impairments.  This Court will examine each impairment in turn.

### i.    Sleep Apnea

Plaintiff was treated by Dr. Michael Slattery of United Medical Associates' Sleep and Neurodiagnostic Center for "severe sleep-disordered breathing and obstructive sleep apnea." (T at 187, 200).[5]   Plaintiff complained of snoring and daytime fatigue and sleepiness. (T at 195, 198). He was observed to stop breathing while sleeping and occasionally woke up short of breath. (T at 198).  Tamara Martin, a physician's assistant collaborating with Dr. Slattery, reported that a sleep study and diagnostic polysomnogram revealed an apnea/hypopnea index of 130.4 events per hour, with significant oxygen desaturations (to a low of 66%).  (T at 198, 203).  Dr. Slattery prescribed the use of a BiPAP machine and recommended weight loss. (T at 187, 190, 197).  Thereafter, the treatment notes indicated that when Plaintiff used the machine, it controlled his obstructions, but he often forgot to use the machine or was unable to use it because of "comfort issues." (T at 187).

Dr. Slattery recommended that Plaintiff consider surgical intervention in light of his difficulties with the BiPAP machine. Plaintiff underwent surgery designed to address his sleep apnea in December 2009. (T at 187, 222, 255, 428, 434-35).  A post-surgical sleep study indicated "moderate sleep-disordered breathing" of 25.8 events per hour, with "mild" oxygen desaturations to a low of 85%. (T at 425, 431-32).  Post-surgical use of the BiPAP machine was noted to reduce the apnea/hypopnea index to 0.8 events per hour, with oxygen saturations remaining at 90% or higher. (T at 425).  Dr. Slattery concluded that

---

[5]Sleep apnea is caused by periodic cessation of respiration associated with hypoxemia and frequent arousals from sleep. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Daytime fatigue caused by sleep apnea can affect memory, orientation, and personality, and preclude a claimant from engaging in gainful work. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

there was evidence of "moderate sleep-disordered breathing . . . postsurgically" and recommended continued use of the BiPAP machine. (T at 432).

The ALJ concluded that Plaintiff's sleep apnea was not a "severe impairment," within the meaning of the Social Security Act. (T at 13). In particular, the ALJ noted in Plaintiff's "continued ability to function despite his chronic noncompliance with . . . therapy." (T at 13). Plaintiff challenges this finding, pointing to evidence of daytime fatigue resulting from his sleep apnea. Plaintiff also cites Solsbee v. Astrue, 737 F. Supp. 2d 102, 111 (W.D.N.Y. 2010), in which the court held that the ALJ erred by failing to consider the effect the claimant's sleep apnea would have on her overall functioning and ability to work.

For the following reasons, this Court finds that the ALJ's conclusion was supported by substantial evidence and rendered consistent with applicable law.

As noted above, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y.1995). Further, the question is not whether Plaintiff's sleep apnea is considered "severe" in the strict medical sense.[6] Rather, the impairment is "severe" in the Social Security disability context only if it "significantly limits" Plaintiff's ability to perform basic work activities. See 20 CFR § 404.1521.

Even before his December 2009 surgery, Plaintiff's sleep apnea was well-controlled when he was compliant with the BiPAP treatment. In September of 2007, Ms. Martin (the

---

[6]Plaintiff's medical providers consistently described his sleep apnea as "severe," meaning that it was a severe case insofar as sleep apnea is concerned. As noted above, the adjective "severe" has a particular (and distinct) meaning in the Social Security context.

treating physician's assistant) noted that Plaintiff was not using his BiPAP machine on a nightly basis, but was "doing well" and "felt better rested" when he used the machine. (T at 193). In March of 2008, Ms. Martin noted that Plaintiff had some equipment problems with his BiPAP machine, but was generally "doing well" and felt better rested" when he was able to use the machine. (T at 191). At that time, Plaintiff was worked at a McDonald's restaurant and commuting to and from work on a bicycle. (T at 191). In September of 2008, Ms. Martin described Plaintiff as "doing well," feeling "better rested throughout the day," and using the BiPAP unit every night. (T at 189). In September of 2009, Dr. Slattery indicated that Plaintiff's apnea/hpopnea index was reduced to 7.4 events per hour with BiPAP treatment, which the doctor described as "very mildly elevated." (T at 187).

Plaintiff's condition improved even further following surgery. On December 29, 2009, a few weeks after the surgery, Plaintiff told Dr. Augustus Valmond, a consultative examiner, that he was feeling better since the surgery and had no daytime somnolence. (T at 255). Dr. Valomond assessed no physical limitations. (T at 258). In May of 2010, Dr. John Abdo, the surgeon who performed the December 2009 surgery, reported that Plaintiff was "doing very well," with improved breathing following the surgery. (T at 436). Plaintiff told Dr. Abdo that he was no longer using the BiPAP machine because he was "breathing very well at night" and no longer needed it. (T at 436). Plaintiff was also "waking up much more rested." (T at 436).

As noted above, Dr. Slattery found Plaintiff's condition much improved following surgery, with some evidence of "moderate residual sleep-disordered breathing . . . ." (T at 432). In August of 2010, Dr. Slattery described Plaintiff as "doing well" and using his machine every night. (T at 422). Plaintiff did acknowledge some non-compliance with

treatment, but indicated it was because he was on a camping trip. (T at 422). Plaintiff denied any daytime drowsiness. (T at 422).

The claimant in <u>Solsbee</u> had persistent apneas and hypopneas (along with daytime sleepiness and fatigue) even after treatment and her treating physician recommended that she use caution when driving an automobile or operating machinery. <u>Solsbee</u>, 737 F. Supp. 2d at 111. Here, the record adequately supports the ALJ's conclusion that Plaintiff's sleep apnea was well-controlled by treatment (both before and after surgery) and did not result in daytime fatigue that would significantly limit his ability to perform basic work activities. Plaintiff does not point to any assessment by an acceptable medical source indicating significant work limitations related to his sleep apnea. Accordingly, this aspect of the ALJ's decision should be sustained.

### ii. Obesity

Although "[o]besity is not in and of itself a disability; . . . [it] may be considered severe-and thus medically equal to a listed disability-if alone or in combination with another medically determinable ... impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." <u>Cruz v. Barnhart</u>, No. 04-CV-9011 (GWG), 2006 WL 1228581, at *10 (S.D.N.Y. May 8, 2006); <u>see also</u> SSR 02-1p; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(Q) (instructing adjudicators to assess carefully the combined effects of obesity and musculoskeletal ailments during Steps 2 and 4 because "[o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system ... The combined effects of obesity with musculoskeletal impairments can be greater than the effect of each ... considered separately."). The Social

Security Administration has said that the ALJ is obligated to "explain how [he] reached [his] conclusions on whether obesity caused any physical or mental limitations." S.S.R. 02-1 p, 2000 WL 628049, at *7.

Plaintiff is morbidly obese. (T at 335). His weight fluctuated around 300 pounds during the relevant time period. (T at 13). The ALJ recognized this fact, but found that Plaintiff's obesity did not rise to the level of a severe impairment. In particular, the ALJ noted that Plaintiff had not alleged disability based on obesity (T at 131) and no acceptable medical source had alleged functional limitations related to obesity. (T at 13).

Plaintiff challenges this finding, noting that at least two treating physicians (Dr. Slattery and Dr. Jimenez) recommended weight loss. (T at 201, 216). However, this fact, without more, only establishes that Plaintiff was morbidly obese, not that he had significant functional limitations related thereto. Plaintiff also argues that his obesity exacerbated his sleep apnea. This is very likely true, hence Dr. Slattery's weight loss recommendation. However, the ALJ's conclusion that Plaintiff's sleep apnea was a non-severe impairment was supported by substantial evidence for the reasons stated above.

Plaintiff further points to a September 2009 treatment note, in which he complained of occasional, severe left knee pain. (T at 227). The pain was aggravated by climbing stairs and sitting and caused decreased mobility, swelling, tenderness, weakness, and sleep difficulties. (T at 227). However, this report appears to have been isolated and suggested that the primary cause of the knee pain was not obesity. The report was generated by Ryan Little, a nurse practitioner, and described the knee pain as related to an "injury." (T at 227). Mr. Little's physical exam was essentially normal, with full range of motion noted

in both knees with no joint deformity in either knee. (T at 228).[7]  As such, this Court finds

no error as to this aspect of the ALJ's decision.

### iii.	Hypertension, Diabetes, and Hyperlipidemia

Dr. Jimenez, a treating physician, diagnosed Plaintiff as having, among other

impairments, diabetes, type II; hyperlipidemia[8], and hypertension. (T at 213).  In November

of 2009, Ryan Little, a treating nurse practitioner, described Plaintiff's hypertension and

hyperlipidemia as "moderate-severe," with tiredness and fatigue noted as associated

symptoms. (T at 218).  The ALJ's conclusion that these impairments were non-severe (T

at 12) is supported by substantial evidence.  A May 2007 treatment note indicated that

Plaintiff's hypertension was "under good control." (T at 330).  In December of 2010, Mr.

Little described Plaintiff's diabetes as "uncomplicated," "benign," and "well controlled." (T

at 451).  He characterized Plaintiff's hyperlipidemia as "well controlled" and hypertension

as "benign" and "well controlled." (T at 451).  Plaintiff does not cite any opinion by a treating

source assessing a limitation arising from these impairments that would significantly impair

---

[7]Nurse practitioners are not "acceptable medical sources" under the Social Security Regulations. 20 C.F.R. § 416.913(a).  However, a nurse practitioner is included among "other sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work. 20 C.F.R. § 416.913(d)(1).  While an "other source" opinion is not treated with the same deference as a treating physician's opinion, the assessment is still entitled to some weight, especially when there is a treatment relationship with the claimant. Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant"); see also Mejia v. Barnhart, 261 F.Supp.2d 142, 148 (E.D.N.Y.2003 (finding that the ALJ should have afforded a treating therapist's opinions at least a little weight where the therapist "saw plaintiff on a regular basis and [ ] offered a diagnosis consistent with that of the treating psychiatrist"); White v. Comm'r, 302 F.Supp.2d 170, 174-76 (W.D.N.Y.2004) (reversing where the ALJ failed to give appropriate weight to the plaintiff's social worker, who had a regular treatment relationship with the plaintiff and whose diagnosis was consistent with the treating psychiatrist); Rivera v. Bowen, 665 F.Supp. 201, 206 (S.D.N.Y.1987) (finding that the opinions of chiropractors and physical therapists must be accorded at least some weight).

[8]Hyperlipdemia is a condition involving high blood cholesterol levels.
See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001440/ (last accessed January 16, 2013).

his ability to perform basic work activities.

### iv.    Harmless Error

Lastly, because the ALJ in this case (a) concluded that Plaintiff had established an impairment considered severe under the Act (i.e. borderline intellectual functioning), (b) was aware of and specifically addressed the non-severe impairments, and (c) continued with the sequential analysis, any arguable errors in his findings at step two of the analysis were harmless. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

### b.    Listing § 12.05 (C)

Impairments listed in Appendix 1 of the Regulations (the "Listings") are

"acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing. See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

Plaintiff argues that his mental impairment meets or medically equals the impairment set forth in § 12.05 of the Listings (Mental Retardation). Listing § 12.05 states that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." The required level of severity for this disorder is met when the requirements in A, B, C, or D of the Listing are satisfied. Plaintiff argues that his impairments meet or medically equal subsection C of the Listing.

To satisfy Listing § 12.05(C), Plaintiff must show: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 through 70; and (3) a "physical or other mental impairment imposing an additional and significant work-related limitation of function."

The ALJ found documented medical evidence substantiating the existence of

15

borderline intellectual functioning prior to age 22. (T at 17). He also noted that IQ testing of Plaintiff performed in January of 2005 and December of 2006 yielded scores within the 60 - 70 threshold required under the Listing. (T at 17). However, the ALJ found that Plaintiff's activities of daily living (including part-time work at a fast food restaurant) were inconsistent with the "deficits in adaptive functioning" necessary to satisfy the Listing. (T at 17). Further, the ALJ found that Plaintiff did not have the requisite "physical or other mental impairment imposing an additional and significant work-related limitation of function" to satisfy the Listing. (T at 18-19).

The ALJ's findings were supported by substantial evidence. With regard to whether Plaintiff had the requisite deficits in adaptative functioning, the record indicated that he could attend to personal grooming and hygiene, cook, perform chores, drive, do laundry, shop, build model cars, help with building projects, work as a mechanic, and work part-time at a fast food restaurant. (T at 36, 39, 256, 291, 299 390). The definition section of the Listing (§12.00) provides examples of "adaptive activities" consistent with those performed by Plaintiff, e.g. "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."

The ALJ's conclusion with regard to the "other impairment" prong of subsection (C) is likewise supported by substantial evidence  The Second Circuit "has not yet ruled on what test should be utilized in determining whether a claimant's 'physical or other mental impairment,' other than his low IQ imposes a significant work-related limitation." Edwards v. Astrue, No. 07–CV–898, 2010 WL 3701776, at *6 (N.D.N.Y. Sep't 16, 2010). The district courts of the Second Circuit have generally adopted the view of the First, Eighth, and Tenth

Circuits to the effect that "a limitation other than low IQ is 'significant' if the claimant suffers from an additional physical or other mental impairment that is 'severe' as that term is defined at step two of the Commissioner's sequential analysis." Id.; see also Baneky v. Apfel, 997 F. Supp.2d 543, 546 (S.D.N.Y.1998); Aviles v. Barnhart, No. 02–CV–4252, 2004 WL 1146055, at *7 (E.D.N.Y. May 11, 2004); Velezquez v. Chater, No. 93–CV–0264E,1996 WL 107109, at *2 (W.D.N.Y. Mar. 6, 1996).

In this case, the ALJ found a single severe impairment at step two of the sequential analysis— borderline intellectual functioning. (T at 3). The ALJ did not find any severe physical or impairments or other severe mental impairments. Plaintiff argues that his other impairments (i.e. sleep apnea, diabetes, hypertension, hyperlipidemia, and obesity) are "severe" as defined at step two of the sequential evaluation process and therefore should have satisfied the final prong of the § 12.05 (C) test. This Court finds Plaintiff's argument unavailing. Essentially, Plaintiff's argument herein restates his first argument (i.e. that his other impairments were severe within the meaning of the Social Security Act). As outlined in detail above, the ALJ's conclusion that Plaintiff's other impairments did not significantly limit his ability to perform basic work activities was supported by substantial evidence. For the same reason, this aspect of the ALJ's Listings analysis should be sustained.

### c. Credibility

Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

> 1.   [Plaintiff's] daily activities;
> 2.   The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;

3.      Precipitating and aggravating factors;
4.      The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.      Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.      Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.      Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In the present case, Plaintiff testified that he was tired during the day no matter how many hours he slept. (T at 35). He has difficulty reading and concentrating. (T at 36, 37-38, 255). Plaintiff described himself as easily disturbed and a slow learner. (T at 255). As of the date of the hearing before the ALJ, he was working two days per week at a Burger King restaurant. (T at 36). He splits wood to heat his home. (T at 39). He cooks, cleans, does laundry, and shops. (T at 256). Plaintiff showers and bathes himself, but requires reminders to do so. (T at 256).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible. (T at 20). In particular, the ALJ noted Plaintiff's ability to perform a wide variety of independent daily activities and the lack of diagnostic and clinical findings to support Plaintiff's claims. (T at

20-21). Further, the ALJ found Plaintiff's testimony concerning constant fatigue inconsistent with his daily activities and statements to treating providers. (T at 22).

Plaintiff contends that the ALJ should have afforded more weight to information provided by Plaintiff's mother and contained in a Disability Report prepared by "B. Arnold" of the Social Security Field office and a questionnaire completed by Plaintiff's mother on his behalf.[9] The disability report indicated that Plaintiff falls asleep whenever he sits down and receives no relief from his sleep machine. (T at 131). In the questionnaire, Plaintiff's mother reported (on Plaintiff's behalf) that he had no energy and did not care whether he bathed. (T at 139). He lost his drivers license because of traffic tickets and sleep apnea. (T at 141). Plaintiff does not travel because he sleeps constantly. (T at 143). He has difficulty paying attention and dealing with stress. (T at 144-45).

This Court finds no reversible error with regard to the manner in which the ALJ weighed the evidence and assessed Plaintiff's credibility for the following reasons:

Contrary to the information provided by Plaintiff's mother, the treatment notes from Plaintiff's medical providers indicated that his sleep apnea (and the daytime fatigue related thereto) was improved both with BiPAP treatment and surgery. (T at 187, 189, 191, 193, 255, 258, 422, 432, 436). In addition, the opinions provided by several consultative examiners supported the ALJ's conclusion and contradicted the subjective claims of limitation. Dr. Valmond, a consultative examiner, opined that Plaintiff did not have any physical limitation. (T at 258). Dr. Kautilya Puri, another consultative examiner, concluded

_____

[9]The disability report primarily consisted of information obtained from Plaintiff and his mother. Specifically, the report indicates that it is based on a face-to -face interview with Plaintiff (T at 127), but also states that his mother "answered many of the questions." (T at 128). It is not clear which questions in the report were answered by Plaintiff and which were answered by his mother. The questionnaire was completed by Plaintiff's mother (Ruth Ann White). (T at 138).

that Plaintiff did not have any objective limitations in communication, fine motor, or gross motor activities. (T at 365). Dr. Puri also assessed no objective limitations in Plaintiff's activities of daily living. (T at 365). Dr. Michelina Regazzi, a consultative psychologist, examined Plaintiff and performed intelligence testing. She concluded that Plaintiff could understand and carry out simple instructions, had some good problem-solving skills, and an adequate ability to communicate his thoughts verbally. (T at 295). Although Dr. Puri noted some weakness in Plaintiff's verbal intelligence and reading activities, she found no restrictions in his ability to carry out daily activities or travel independently." (T at 295).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs, 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F. Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

For the above-stated reasons, this Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750

F.2d 180, 196 (2d Cir.1984).  The ALJ's decision should therefore be upheld.


## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers and the consultative examiners and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. In sum, this Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED

Respectfully submitted,


Victor E. Bianchini
United States Magistrate Judge

Dated:   January 18, 2013

Syracuse, New York

# V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Dated:  January 18, 2013

Syracuse, New York